It pleases the Court. It is black-letter law that when considering a 12b-1 motion as it relates to the rather relaxed standards for Article III standing, that the Court is bound at the trial level to look at the well-pled material allegations of the complaint. And with respect, this case went off the tracks when that did not occur. The complaint alleges with great specificity a dispute that beyond any doubt is something that would be subject to declaratory relief, and therefore a motion to compel arbitration to require declaratory relief. It alleges a pretty garden-variety insurance dispute where a claim was submitted, a claim was denied on the grounds that the insurance policy had been obtained through fraud and deceit, and then subsequently the policy was rescinded. And it was requesting relatively straightforward and not particularly remarkable relief, which is it wanted, in this case because there was an arbitration agreement, declaratory relief, and in this case compelled through arbitration. Was there a claim being made on the policy at that point in time? Yes. The action was brought? Yes. There was a claim filed on, let's see here, March 25th, and the claim was denied in writing three days later. They also requested arbitration, and they refused arbitration in writing. There was also a subsequent letter where they indicated they were going to enter into an assignment of rights unless they reversed their coverage determination, in other words, the denial of the claim, and that the amount would be an amount of at least $2 million. So, yes, there was a claim. It was denied. And then there was a subsequent letter, which is similar to the Rhodes case, where a letter threatening litigation by itself confirms standing. Now, what happened here was — And that letter came prior to your filing the case for demanding arbitration? Yes. The letter denying the claim came three days after the claim was filed. And then the subsequent letter threatening litigation didn't come for almost a year later, from March of 13 to April — I'm sorry, April of 13 to March of 14. And the action compelling arbitration came subsequent to that. And these are all very well-plaid in paragraphs 42, 43, and 45 of the complaint, where they go into some detail as to the fact that APIC wants arbitration and a declaratory relief on three issues. One is assignability of the contract. The second was whether or not the rescission was proper. And the third had to do with coverage. Now, you know, much as a pack of dogs can get distracted by a squirrel, in this case the squirrel was this alleged settlement between the Gutierrez's and the Anglici's, which could not have settled Allied's dispute. Allied wanted and still desires that this Court require an order considering the arbitration petition, because Allied — But did you jump the gun in this case? Because eventually that lawsuit was dismissed. Why not wait until the settlement is finalized and the case finally settled before rushing to court to file this particular case? Well, I don't believe that Allied did. For one thing, insurance companies proactively pursuing declaratory relief has been favored. The Court's not disfavored. In this case, whatever determination that they made did not resolve what Allied wanted, which is a determination about rescission, because rescission is broader — would deal with questions broader than just this claim. If the policy is properly rescinded, then any other claim that could come in would not come in and everybody would know their rights. Right, but part of your lawsuit also sought to compel arbitration before any claim had really been filed. So there's a lot of uncertainty over what claims you're pursuing arbitration on, whether those are even covered by the arbitration agreement. So that's the part that seems premature to me. Well, it would be — the thing is, is that the question of settlement, though, is not within the four corners of the pleadings. It was not something for the trial court to properly consider. The only thing the trial court should have been considering is what was within the four corners of the complaint. There was nothing about the settlement there. Getting to a point that sort of interested me, which is not directly on point with the standing, but the question of the scope of arbitration you were seeking, I gather in some parts of your brief it seemed to me that you were arguing that you had a right of arbitration against the underlying plaintiffs and even asked to the amount of the settlement. You seem to be saying something different today. So could you clarify your position for me? Certainly. Thank you for the question. What the brief was meant to convey is that we do not believe that Dr. Anglici could properly assign the policy to the Gutierrez's. But it also points out, under the Brun's decision, which is briefed in the case, that to the extent that they did, they stand in the shoes of the Gutierrez's, stand in Anglici's shoes, and therefore they're subject to the arbitration agreement. Sure. I understand that argument. I guess my question is, it wasn't clear to me whether or not you were seeking as part of the arbitration, assuming that the arbitrators or whatever entity found assignability against you, if you're seeking to arbitrate the amount of the settlement. At this point, we're not seeking to arbitrate the amount of the settlement. We're seeking to arbitrate coverage. When you say at this point, are you saying you might seek arbitration? I mean, that seems beyond the scope of any relief that you could possibly seek in arbitration. But I just wanted your position on that. The position on the amount of coverage being arbitrated is one I don't think we took a position on. And at this point, I don't think the question of coverage bears on the amount of the underlying award. The thing's either covered or it isn't. Right. So your position today is a straight-up coverage dispute, period. Right. And also questions of rescission and assignability. Do you think the arbitrator has the power to rule on your rescission? Yes. I think the arbitrator clearly does. The arbitration provision is very broad, and it says that any disputes relating to the policy, and clearly whether or not the policy was rescinded or not, would fall within those four corners. But that's a question, I think, for the trial court. The trial court is the one that would need to determine. The trial court would decide whether it's an equitable remedy that would be permissible in arbitration. That's right. And I think the trial court decides is this question arbitrable. And then the other one goes from there. The other, going back to your question for a moment, though, Judge Winn, I think that if you have a if you stay within the four corners of the complaint, the complaint indicates that they're requesting rescission. The only other areas where a court would typically go outside the four corners of the complaint has to do with judicial estoppel. And there's nothing about this settlement either way that does it. There are some things, though, that did really cry out for judicial estoppel, which is what the Washington and we briefed this, Superior Court was told versus what Judge Marshall was told three months later. Because the Washington court was told that it was a final deal. It was, quote, signed. Dr. Anglosy had executed it, and his lawyer had executed it. And then three months later, when they're in the U.S. District Court, counsel says, quote, there's no signed copy. They also said the assignment had already taken place and was a fait accompli, and the validity of the contract was not before the Washington Supreme Court, Superior Courts. When you look at that, the idea that we jumped the gun somehow, and then when they got before Judge Marshall, she specifically asked, was there any assignment of the doctor's rights? Now, this is a fact-finding mission that wasn't appropriate in the 12b1, but still. The response was, no, not at this time. There is no assignment. Well, judicial estoppel needed to be applied here. And then the other thing is that if you want to look at what happened in the Washington Superior Court having any bearing on anything, they had filed an action for declaratory relief. I think they're kind of stuck with that, that they themselves said that declaratory relief is appropriate in this case. And if you ‑‑ if the standard that the trial court uses becomes the standard that this court adopts, it will constitute a radical departure from 80 years of settled jurisprudence from the Etna decision, which just simply said it can't be hypothetical. You see other cases saying it can't be numerical, it can't be pure speculation. But the only ‑‑ the idea that if they're not actively seeking payment, if they're not actively seeking payment, that that somehow causes Article III standing to go away, will create many more cases like this one, where right before the hearing on arbitration, the hearing on declaratory relief, a party can say, well, gee, I'm no longer actively seeking payment. And then they do something to cause that to look to be so. They settle something or they do something. And they ask the court to ignore what's within the four corners of the complaint. And that is ‑‑ that would constitute a radical departure from many, many years of settled jurisprudence and essentially eliminate the ability to ever get declaratory relief in insurance disputes. Because they can say, well, today I'm not doing it. And they were very careful. They said, we might do it in the future. And they dismissed that case without prejudice. But that didn't change the four corners of the complaint. And the four corners of the complaint were clear that there was a dispute and that they were requesting rescission. Do you want to reserve? I was just going to ask for that. Thank you, Your Honor. Good morning. May it please the Court. Your Honors, you're absolutely correct. In this case, APIC did jump the gun. They initially filed a complaint before there was anything filed in the Washington State Superior Court. Why does it make any difference if there's anything filed? Pardon? Why does it make any difference if there's anything filed or not? If there's a coverage dispute, doesn't the insurance company have the right to seek a declaratory judgment action even if there's no underlying claim filed? Your Honor, it's interesting in some cases, yes. In 2013, so APCI had to insure this chiropractor for approximately eight years. He gets a notice that he's going to be investigated by the Washington State Department of Health. He wasn't told who was investigating or why. He just thought it was a complaint. When he notified his carrier, will you be representing me in this investigation, they immediately wrote back and told him no. In actuality, we believe that there was notice to APIC shortly after the doctor's initial notification from the Department of Health. All good points to make in defense. Pardon? All good points to make in defense of the rescission action. I just don't understand the theory that you can't file a declaratory judgment action as soon as there's a coverage dispute. They didn't file a declaratory judgment action as soon as there was a coverage issue. That was one year prior in 2013. Right. They did nothing. They rescinded, and there was nothing for a year. But the statute hasn't run on that. I mean, typically what happens, if there's a coverage dispute, an insurer will file a declaratory judgment action against the insured. So here we have the claim is ultimately tendered. They deny the claim. And in some states, if you don't file a declaratory judgment action at that point, then you may be subject to waiver. So I don't understand your theory that there's no Article III standing because there are thousands of these suits filed all the time. Perhaps, Your Honor. They had rescinded the policy. And I don't know to what extent there was actually a claim tendered. The doctor simply asked for a representation and an investigation. They told him no, rescinded his policies, and sent him back a refund. One year later, a malpractice action starts occurring, and they give APIC notice of that. But why at that point aren't they within their rights to file the action? They've been given notice of this claim. Well, they've been given notice of a claim that the injured patient is pursuing a claim against the doctor and the doctor is considering his rights. And the doctor is considering assigning his rights under the policy. Yes. And the policy suggests there is no assignment. And as the doctor and patient pursue. But why at that point aren't they entitled to bring the action? They were not a named party. There's no indication that. Well, in dismissing this case, the district court found that there was no allegation as to a specific threat of impending litigation. Counsel argued, and he cited to this letter in the record as well, that there was an impending threat of litigation. Are you saying that the record is insufficient to support that or that the case law requires more than that? I think that the case law requires more than that. I think that there was a letter that suggested that, look, if you're not going to ‑‑ in Washington law, and I think that we have an issue here with the laws, in Washington an insurer is required to defend under a reservation of rights. Right. And that was an issue. Right. So there was a ‑‑ the doctor tendered the claim to the insurer, correct? I suppose he attempted to do so. Well, did he or didn't he? Did he demand that the insurer defend him in the suit? Correct. He did. So at that point, the insurer had two options. One, they could have ‑‑ well, three options. They could have refused to defend, which they did. They could have defended under reservation of rights. Or they could have filed a declaratory judgment action. Correct. And if they had the right to file a declaratory judgment action then, what extinguished that right? Well, at that time there was no evidence that the doctor was actively pursuing anything. By the time that they had filed, we filed the suit. I don't mean to interrupt, but I don't understand your answer. But the doctor had intended to do anything with his claim. He was being sued. He was contemplating consent judgment and decided to proceed on that end. At the time that we entered into a settlement agreement, it wasn't contemplated what the rights were vis‑a‑vis the insured and the doctor or the doctor and the patient as to how they would resolve that. So they entered into a settlement agreement that didn't ultimately work out. And when we went down to argue before Judge Marshall, there was no settlement agreement. There was no assignment. My question is, and I again apologize for interrupting, I don't understand what the existence of a settlement agreement has to do with the insurer's right to seek a declaratory judgment action or to pursue a declaratory judgment action against its insured if there's a coverage dispute. They would have that right whether or not there was litigation, whether there was a settlement or not, right? Perhaps. Well, if perhaps is, that means they've got Article III standing to pursue at least those claims. There was nothing imminent at the time that we argued those motions that suggested that the parties would get together and continue down this path. The court had asked APIC, what do you get? You've rescinded the policy. There's no opportunity for an assignment within the policy. There's no claim, pending claim. APIC has not been named. What could we do? Well, there was a pending claim because the doctor had demanded that the insurer defend or pay, right?  Well, to some extent. I mean, he had, APIC had rescinded, so they didn't believe that there was a claim. But they filed, they sought relief for formal judicial rescission as well as a declaratory judgment action. I'm leaving aside the arbitration, which is a whole separate issue, but I think it seems to me they've got at least two claims for which they've got Article III standing. I just don't think that there was anything imminent or, you know, they waited an entire year before they decided to file based on the threat of litigation. And then after the threat of litigation went away, they had nothing. Let me ask you a different question. I just want to be educated on Washington law. I assume that Washington is not a direct action state, meaning that third parties can't file against insurance companies? Correct. So the typical thing, if you want to pursue a bad faith case in Washington, you have to take an assignment of the first party claim from the insured, correct? I believe so. Okay. I mean, that would seem to me, you either have a direct action state, and we have some in our jurisdiction where third parties' claims can file directly against the insurance company for failure to settle in a reasonable manner or investigate a claim, and you have other states where they do not allow direct actions. But, in fact, the way that you pursue a bad faith claim or failure to settle claim is by taking an assignment of the first party, in other words, the insured's claim. And I gather Washington falls in that category. Well, we also have an added component with there being a difference in Washington State, that Washington insureds are not supposed to, we have state law that suggests that they can't be called to other jurisdictions. And so I think that that was in part some of the problems here. We have a California company, initially an Arizona company, filing actions and suggesting that their forum, selected forum, is in California. In Washington, there's state law that exists that suggests that insurers cannot sell insurance to Washingtonians and force them to go arbitrate or litigate in foreign jurisdictions. And so that was a secondary issue that we never got to because the court granted the motion to dismiss as to whether or not we could be called down there. You may have a perfectly good defense on venue. Pardon? You may have a venue argument. Yeah, and I just don't think that the court had quite gotten to that. Ultimately, because there was no pending state court action, because it had been dismissed at the time that we brought the 12B6 motion, there wasn't anything that the plaintiff had sought to arbitrate. The court, APIC, could not answer the question as to what exactly it sought to arbitrate, whether or not there was coverage or not. APIC had made a decision that they had rescinded the policies and that there was no coverage. It attempted, as soon as it learned that we were attempting to work out an agreement, to become the first filed and bring that jurisdiction down to California and subject it to coverage. But even under your theory, wasn't there a standing? Wasn't there a very substantial risk that the litigation would be reinstituted? I don't think that there was a substantial risk. I was honest with the court, and I said, we're going to attempt to continue working on whether or not we can achieve a settlement. But there hadn't been any approval of the settlement and, therefore, no effectual assignment. So, basically, it was Dr. Anglici who just wasn't participating. And that's why we suggested that there was no imminent dispute, especially at the time that the court looked at the issue. Is there anything to suggest that this litigation is going to continue? Certainly, at this point, there was nothing that the court needed to redress or send to arbitration. You were not going to sue if settlement failed? Well, what's that? You were not going to sue if settlement failed? Well, the settlement failed because we hadn't got it approved. It was continued. No, I understand that. But, I mean, let's assume that the second settlement falls apart. You were not going to pursue claims on behalf of your client against the doctor? If the settlement fell apart? Yeah. Correct. You were not going to pursue it? Correct. Going to walk away from the claim? Correct. Yeah. Why? Why would we walk away from the claim? Yeah. If the settlement wasn't affected? Yes. I'm sorry, this is kind of an improper question. Well, it's a jurisdictional problem, Your Honor. We would like to be able to litigate in Washington. Coming down all the way to California in a foreign venue. No, I think you misunderstand. We're talking about the state court action in Washington, not about the California action. I mean, you were going to pursue your claim. Forget the insurance company. You were going to pursue your claims against the doctor, I assume, even if settlement failed. In state court in Washington. I'm getting to the notion of risk. I mean, you've got a suit filed, and then there was a settlement, and then the settlement failed. And then you have a second suit filed and then a settlement, which was approved. But if it hadn't been approved, if it all had fallen apart, are you representing that you were going to abandon your client's claims against the chiropractor? Yes. Why? Economically. Okay. Because there wouldn't be any recovery. The claim would get discharged. So it is to we would need to pursue whether or not there's an insurance policy. And this is a special risk retention group, and it's subject to different laws. And apparently there's been a lot of policies that have been issued and a lot of litigation that APIC has created over the United States. And it's successful in situations like this, causing parties that don't have the financial resources to go litigate in foreign venues and whatnot. So, yes, it was imperative that that settlement agreement be approved and that the settlement agreement be effective and that we get the court to approve it so that we could go forward. So we would have preferred that a Washington court look at it to determine whether or not we have this insurance company acting above its status as an insurance company, suggesting that it's subject to federal laws, a risk retention group, and have a Washington court render a decision as to whether they can do that, whether a rescission or what choice of law would apply. We would like that to be looked at in Washington. But we never got to that point because the court, when we argued, and as you know, APIC initially brought this action before we filed suit based on the threats and filed so that it could be the first file to establish federal jurisdiction. And then we filed suit, and once the settlement agreement didn't get approved and we dismissed, it put us in a very awkward situation. So we attempted to kind of regroup. I didn't know if we would ever be coming back to do it again. Now, to the extent that the California court would have found that there was a controversy and forced us into arbitration, I think that the claims would have been amended. Well, let me ask you this, and you may not know the answer to this. Does Washington, by statute, codify the right to assign a first-party insurance claim, or is that just a matter of common law? I believe it's a matter of common law. But like I said, we never got to Washington law to address whether or not they could rescind, what choice of law we would have. So at the point, I think that Judge Marshall made her ruling as to whether or not a case or controversy existed. I did not know, and I represented to the court. I don't know that this goes forward. This would be potentially. I would attempt to try to see if we could work out a settlement agreement or rework it, but I wasn't certain. And so at the time, the court had asked the insurance company, what do you seek? What do you seek to arbitrate? What do you seek to recover? What's your injury as a result of this attempted assignment? Could the doctor even assign his rights? And so I think that because APIC didn't, had rescinded the policies, had waited a year, found some threats that they may be going forward, and just threats that they're going to enter into an agreement that could potentially bind APIC. So no one was coming after APIC. The doctor hadn't sued APIC. It made a claim over two years prior that it was, that he wanted some assistance in investigation, and that was it. So I think Judge Marshall was correct in looking at it, that there wasn't anything imminent or potential other than speculative that something would come out. And then after we dismissed, after the court dismissed, I think, if there was a new filing that then APIC could bring its act together. So let me ask one more question. Let's assume that we hold that they can't pursue their claims in California. The only way you're going to prevail is by filing a declaratory judgment action in Washington. Is that right? I'm sorry, say that again. How are you going to pursue your claims against the insurance company if this case remains dismissed? By filing a declaratory judgment action in Washington? There is already a declaratory judgment action filed in Washington, and APIC has appeared there and suggested this case, it was stayed for this case, for this court to determine. Very good. Thank you. Thank you. Let me identify three discrete events that created Article III standing. The first one was the March 25, 2014 letter. This is the Rhodes case, basically. It says we're going to proceed to execute a consent judgment. Rhodes was about threat of litigation. The second one was when they refused to arbitrate in the April 4, 2014 letter. That's the International Brotherhood case, which, in fact, goes on to say that the refusal to arbitrate itself takes you from substantial risk of harm to the harm having occurred at the point at which you refuse arbitration. And the third one was the April 11, 2014 letter that said the amount to be claimed will be not less than $2 million. That, again, takes us back to Rhodes and actually past Rhodes. My learned colleague indicated at some point that the litigation was not certainly impending. That's probably a reference to the Clapper case, because they did rely on that in their briefing. The problem with that is that Clapper was not a pleadings case. It was a motion for summary judgment case. It specifically stated you can't rely on your allegations and your pleadings anymore, because it was at the end of the case in response to a motion for summary judgment. Clapper is also inopposite for two other reasons. It was the court's case. Why would that affect what the standing for Article III is, the status of the case? I mean, why would that affect what the test is? Well, Clapper, one of the things Clapper talked about was Article III standing, and it talked about the status of the case. Well, there is a test.  And as you say, you have to accept the facts in the complaint. But it doesn't change the nature of the test. In other words, whether the test is substantial risk of harm or certainly impending. That is correct. But what Clapper said in footnote 5 is that to the extent that anyone thinks there's a difference between certainly impending and substantial risk, that the parties in Clapper didn't meet either standard. They also made a point of saying that they are more rigorous about analyzing standing in cases of, and I believe I'm quoting them word for word, foreign policy or intelligence gathering. This had to do with intelligence gathering out of the country. But at that point, they said you haven't produced the proof that shows either substantial risk of harm or that it's certainly impending. In this case, this is a pleading case. And I believe that under the pleading standard, we certainly have pled that. The other point is my colleague indicated, well, this is a coverage dispute. But those letters that demanded coverage were never withdrawn. They never in any way withdrew their statement that they felt that these claims were covered. This is a situation where we wrote a letter saying, oh, never mind, we withdraw it. And that settlement didn't withdraw it. And them dismissing it without prejudice didn't withdraw it. There was a live request to an insurance company saying, I think I'm covered. I think I can assign. I don't agree with your rescission. All three of those are letters that are in the record and that we briefed. And they never needed approval of the settlement agreement to sue. That was something they chose to do, but it didn't somehow vitiate their ability to get a settlement. And the final point I wanted to make is they indicated that for some reason we were trying to engage in venue shopping, which is clearly what I believe they're trying to do with Washington, by being first filed. That's not what was going on at all. As we indicated in our briefing, the only court that can implement the settlement agreement is the U.S. District Court in Los Angeles because the Federal Arbitration Act provides that a district court cannot order arbitration outside of its judicial district. And there's been no ---- Well, that's true for the arbitration claim, but it certainly is not true for the rescission or the declaratory judgment claims, which in any event would have to be decided under the laws of the State of Washington, regardless of where the venue is, right? Well, it would have to be decided in arbitration by the arbitrator, but my point is the only place we could have filed for arbitration, because remember the declaratory relief is going to be decided in the arbitration, was in the U.S. District Court. Perhaps not. Well, that was our contention. Yes. And we certainly are going to ---- The arbitration petition, which is part of the record and is attached, specifically asks that those questions be resolved by the arbitrator. And unless there are any questions at that time. Very good. The case is argued to be submitted for decision. Thank you both for your arguments.
judges: Thomas, Nguyen, Amon